UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JEANNETTE AYINKAMIYE, Plaintiff, | : | |
| v. | : | C.A. No. 17-54S |
| RHODE ISLAND COLLEGE, CITY OF PROVIDENCE, and STATE OF RHODE ISLAND, Defendants. | : | |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

This matter came on for hearing upon the motion for an "emergency injunction" of *pro se* Plaintiff Jeannette Ayinkamiye. ECF No. 3. Plaintiff's motion was referred to me for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).[1] Upon review, the Court determined to treat it as a motion for temporary restraining order ("TRO"). As always in dealing with the filings of a *pro se* litigant, the Court has read Plaintiff's complaint and TRO motion with leniency. Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.").

According to her unverified complaint, Plaintiff came to the United States in 2006 at the age of eighteen; she is a refugee who survived the Rwandan genocide, including brutal rape and mental torture in a refugee camp. ECF No. 2 ¶ 2. As soon as she settled in Rhode Island, she courageously focused on acquiring an education, of which she had been deprived during her

[1] Plaintiff also moved for leave to have the entire case sealed. ECF No. 1. At the hearing, she advised the Court that she wanted the matter to be public and did not intend to press her motion to seal; indeed, she asked the Court whether she could publicly announce her suit and her need for legal counsel to pursue it. The Court assured her that the First Amendment protects her ability to speak publicly (or privately) about her claim. Based on this colloquy with Plaintiff, the Court denied the motion to seal making the case a matter of public record.

childhood ordeal in Rwanda. Id. ¶ 2. After she was denied (due to her age) an opportunity to attend high school (resulting in her claim that the City of Providence and State of Rhode Island wrongfully deprived her of an opportunity to equal education), in the spring of 2007, she entered the Community College of Rhode Island ("CCRI"). Id. ¶¶ 2-7. Plaintiff was successful at CCRI; she earned enough college credits to transfer to Rhode Island College ("RIC"), where she matriculated in 2012. Id. ¶ 7. Her claim based on the denial of educational opportunities due to age arises under the Constitution, the Equal Educational Opportunities Act (20 U.S.C. § 1703), Title VI of the Civil Rights Act (42 U.S.C. § 2000d, *et seq*.) and the Refugee Act (8 U.S.C. § 1522). Id. ¶ 6. The constitutional claims are asserted under 42 U.S.C. § 1983. Id. ¶ 6. None of these claims are implicated by Plaintiff's TRO motion.

Plaintiff's journey at RIC has not been smooth. In September 2015 and again in August 2016, she alleges that RIC's office of financial aid apparently questioned her eligibility; the pleading appears to state that, to maintain eligibility, she was required to tell over and over the horrific story of her experiences in Rwanda, which caused her significant stress. Id. ¶¶ 11-23. Ultimately, but not until she missed a year of college, this dispute was resolved when RIC agreed to accept a note from a doctor. Then, other issues with financial aid arose because of a problem with RIC's email system; when Plaintiff claimed this caused her mental anguish, RIC advised her to erase the email. Id. at ¶¶ 24-33. Like her claim of denial of access by refugees to education based on age, Plaintiff's financial aid dispute is not related to the emergency on which her TRO motion rests.

The events giving rise to the TRO motion arose on January 7, 2017, when Plaintiff alleges she submitted a paper to a professor, who refused to accept it and asked her to drop the class. Id. ¶ 37. Plaintiff also claims that she organized an open forum for the RIC community to

discuss policies that she believes adversely impact students. Id. ¶¶ 41-44. On January 19, 2017, an incident occurred that the complaint does not specifically describe; Plaintiff claims that this incident caused her to fear retaliation and demeaning racist tactics for the unjust purpose of interrupting her education, as well as to suffer humiliation and emotional and mental distress. Id. ¶¶ 40, 49-53. In response to RIC's actions, Plaintiff asked to be transferred to another RIC campus but received no response.[2] Id. ¶ 38.

Fearing retaliation and "academic disadvantage," Plaintiff filed her motion for an emergency injunction. She asks the Court to order that she be permitted to attend classes at RIC and that the Court "suspend" all of her examinations and papers submissions during the pendency of the suit. ECF No. 3. After her motion was referred to me, by text order dated February 8, 2017, I scheduled a prompt TRO hearing and directed Plaintiff to provide Defendants with at least forty-eight hours' notice. Despite the very limited notice, all three Defendants appeared through counsel, although a formal summons joining them as defendants in the case has yet to be served on any of them.

Injunctive relief is an extraordinary and drastic remedy. Peoples Fed. Sav. Bank v. People's United Bank, 672 F.3d 1, 8-9 (1st Cir. 2012). This is particularly true of a TRO, for which the defendants are afforded minimal notice. Fed. R. Civ. P. 65(b). For the court to issue a TRO, Plaintiff, as the moving party, must sustain the burden of demonstrating: (1) a substantial likelihood of success on the merits; (2) a significant risk of irreparable harm if the injunction is withheld; (3) a favorable balance of hardships; and (4) a fit (or lack of friction) between the injunction and the public interest. Fed. R. Civ. P. Rule 65; Harris v. Wall, No. CV 16-080 S, 2016 WL 6820369, at *7-8 (D.R.I. Nov. 18, 2016); see Washington v. Trump, No. 17-35105,

[2] RIC's counsel confirmed that, unlike CCRI, RIC has no other campuses so Plaintiff's request could not have been accommodated.

2017 WL 526497, at *1 (9th Cir. Feb. 9, 2017) (at early stage of temporary restraining order, courts focus on likelihood of success and irreparable injury). The purpose of a TRO is to preserve the status quo – "freezing an existing situation" – before the court holds a hearing on a motion for preliminary injunction. Harris v. Wall, 2016 WL 6820369, at *8; Granny Goose Foods, Inc. v. Bhd. Of Teamsters &Auto Truck Drivers Local No. 70 of Alameda Cty., 415 U.S. 423, 439 (1974). By contrast, an injunction that asks the court to alter the status quo, which is what Plaintiff is seeking here, is atypical. Harris, 2016 WL 6820369, at *8. Designated as a "mandatory injunction," such relief "normally should be granted only in those circumstances when the exigencies of the situation demand such relief." Braintree Labs., Inc. v. Citigroup Glob. Markets Inc., 622 F.3d 36, 41 (1st Cir. 2010); Textron Fin. Corp. v. Freeman, No. CA 09–087S, 2010 WL 5778756, at *3 (D.R.I. Oct. 28, 2010); see Harris v. Wall, 2016 WL 6820369, at *8 (when injunction sought is mandatory, courts should exercise more caution).

A TRO is appropriate if "serious questions going to the merits were raised and the balance of the hardships tips sharply in the plaintiff's favor," so that the preservation of the status quo is necessary to prevent irreparable harm as the court considers complex legal questions requiring further inspection or deliberation. Washington v. Trump, No. C17-0141JLR, 2017 WL 462040, at *2 (W.D. Wash. Feb. 3, 2017). Evidence of significant and ongoing harm based on a colorable claim is necessary to justify the entry of a TRO, Washington, 2017 WL 526497, at *2, with irreparable harm measured on "a sliding scale, working in conjunction with a moving party's likelihood of success on the merits, such that the strength of the showing necessary on irreparable harm depends in part on the degree of likelihood of success shown." Braintree Labs., 622 F.3d at 42-43.

As grounds for alleging an emergency in this case, Plaintiff represented[3] to the Court that her professor refused to accept her paper with no explanation; when she complained to a dean, she received no satisfactory response other than advice to drop the class, which she has done. She was permitted to switch to a different class; however, on January 30, 2017, she received an email from her advisor that she found to be so demeaning and upsetting[4] that she stopped attending classes and does not want to return without a court order protecting her from further distress. Plaintiff confirmed that RIC has not barred her from class or from its campus; nor has it taken any action to prevent her from attending class. Further, while Plaintiff represented that she has sent emails to various RIC administrators but "nothing has been done," Plaintiff conceded that she had not availed herself of RIC's formal academic grievance process. Counsel for RIC confirmed that a grievance process is available to Plaintiff, that she has not accessed it, that she is free to appeal her grade and that there will be no retaliation against her from the filing of this case. In addition to assuring Plaintiff that he does not doubt the sincerity of her beliefs, RIC's attorney also assured the Court that he would personally assist Plaintiff in finding an advocate in the college administration who could guide her through the grievance process.

Based on the foregoing, I find that Plaintiff has failed to sustain her burden of presenting the requisite proof of any irreparable harm or emergency that a court order might rectify. Further, her claim of an actionable wrong committed by RIC based on her professor's refusal to accept her paper is a "gambit" whose "theoretical underpinnings . . . are shaky." Hennessy v. City of Melrose, 194 F.3d 237, 249 (1st Cir. 1999). It is well settled that the Court cannot act as

[3] Plaintiff did not submit either an affidavit or a verified complaint, nor was the oath administered to her at the hearing.

[4] Based on the representations of Plaintiff and counsel for RIC, it appeared to the Court that Plaintiff received a failing grade on the paper submitted on January 7, 2017, and that her advisor has counseled her by email that participation in a class boycott could adversely affect her academic standing.

a substitute professor, stepping in to grade papers or make academics judgments about the consequences of a late-submitted a paper – such academic sanctions customarily are left to academic channels and do not require a hearing as a matter of constitutional right. See Board of Curators, Univ. of Mo. v. Horowitz, 435 U.S. 78, 90 (1978); Dixon v. Alabama State Bd. of Educ., 294 F.2d 150, 158-59 (5th Cir. 1961) (contrasting dismissal for misconduct, which requires a hearing, with academic dismissal, which does not). Due process is not implicated each time a student at a public school receives a failing grade. Hennessy, 194 F.3d at 252; Demekpe v. Bd. of Trustees of California State Univ., No. CV 11-1177-DDP MLG, 2011 WL 7578069, at *5 (C.D. Cal. Nov. 22, 2011), adopted, 2012 WL 994638 (C.D. Cal. Mar. 21, 2012), aff'd, 551 Fed. Appx. 338 (9th Cir. 2013) (below passing grade in single course does not entitle student to substantive due process protection); Disesa v. St. Louis Community College, 79 F.3d 92, 95 (8th Cir. 1996) (same). Accordingly, I recommend that Plaintiff's motion for a temporary restraining order be denied.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
February 22, 2017